### GENERAL TELEPHONE CO. OF FLORIDA v. SOUTHERN BELL TEL. & TEL. CO. (No. 2).
No. 5976-TP.

Railroad & Public Utilities Commission.

August 31 and September 1, 1960.

Howard P. Macfarlane and Hugh C. Macfarlane, both of Tampa, and John Robert Jones, Columbus, Ohio, for General Telephone Co. of Florida.

Harold B. Wahl and Nathan H. Wilson, both of Jacksonville, and Norman C. Frost, Atlanta, Ga., for Southern Bell Tel. & Tel. Co.

Chairman JERRY W. CARTER, Commissioners WILBUR C. KING and EDWIN L. MASON each participated in the disposition of this matter.

BY THE COMMISSION.

*Order, August 31, 1960:* On June 1, 1960 the commission entered order # 2929 in this docket directing that a pre-hearing conference be held by its general counsel, Lewis Petteway, as hearing examiner, on July 19, 1960, with the attorneys for the parties, for the purpose of considering the following — (1) The simplification of the issues. (2) The necessity or desirability of amendments to the pleadings. (3) The possibility of obtaining admissions of fact and of documents, including the 1957 NARUC-FCC Separations Manual and the 1959 USITA Separations Manual, which will avoid unnecessary proof. (4) The limitation of the number of expert witnesses. (5) The time and place for a hearing of this cause on its merits. (6) And such other matters as may aid in the disposition of this action.

As directed by the commission, the hearing examiner held the pre-hearing conference at the commission's hearing room in Tallahassee commencing at 10 A.M., July 19, 1960. The conference considered the various purposes enumerated in order # 2929, supra, and reached the agreements set out in the examiner's report as follows —

I. *Simplification of the Issues.*

The ultimate issue or controversy to be settled by this complaint proceeding is the amount of money necessary to be paid to complainant by defendant to adequately cover all costs to complainant involved in originating, terminating, operating, and hauling of interchanged message toll telephone traffic, including an adequate and reasonable return on complainant's investment in plant and facilities devoted to that purpose.

However, subject to commission approval, it was agreed by the parties that the commission will take testimony and decide, preliminarily, the following primary issues — (1) The application of

the Charleston Plan to the separation of general plant between intrastate toll use and exchange use. (2) The application of a plan similar to the Modified Phoenix Plan to the separation of inter-exchange plant. (3) The method of separation applicable to digit absorbing equipment.

It was agreed by the parties that General will produce its testimony in support of its complaint and that, as a part of such testimony, it will produce a study which incorporates General's interpretation of the three major issues enumerated above. General announced at the conference that its separation study, and the underlying records and working papers supporting said study and the exhibits to be offered at the hearing by General, will be available to the commission and Southern Bell for examination and inspection at General's principal offices in Tampa at all reasonable hours during the pendency of this proceeding.

Under the agreement reached at the conference Southern Bell will devote its defense primarily to its interpretation of the three major issues aforesaid. Also, Southern Bell announced that its separation study, and the underlying records and working papers supporting said study and the exhibits to be offered at the hearing by Southern Bell, will be available to the commission and General for examination and inspection at Southern Bell's principal offices in Jacksonville at all reasonable hours during the pendency of this proceeding.

It was further agreed by those participating in the conference that, after the foregoing three major issues have been decided by the commission, the matter shall be referred to the parties for the purpose of ascertaining to what extent they can agree as to the factual matters and the application of the commission's decision to such facts in a final determination of the ultimate issue concerning the amount of compensation to be paid complainant for the services described above. In this regard, it was agreed that if Southern Bell so desired it would have the opportunity to dispute the factual matters involved in General's study if the three major issues enumerated above should be resolved in General's favor.

It was further agreed that if the commission should fail to accept or approve either General's or Southern Bell's interpretation of one or more of the three major issues as stated herein, but should adopt some modification or refinement thereof or some separation procedure not contemplated by either of said parties, then and in that event said parties shall have the right, and will be given an opportunity, to take exception to the commission's action and be heard in opposition thereto.

The hearing examiner has recommended that the commission approve the foregoing agreements and understandings concerning the simplification of the issues herein and the procedure contemplated by such agreements.

II. *The Necessity or Desirability of Amendments to Pleadings.*

It was agreed that the foregoing statement concerning the issues shall be considered as an interpretation of the pleadings and shall control the same insofar as the hearing on the three major issues enumerated above is concerned. Under this agreement, in which we concur, no further amendment or clarification of the pleadings is considered necessary or advisable at this time.

III. *The Possibility of Obtaining Admissions, etc.*

General announced at the conference that the 1957 NARUC-FCC Separations Manual and the 1959 ISITA Separations Manual will be offered in evidence at the first hearing in this cause together with various reports of the NARUC considered pertinent in interpreting the NARUC Manual. General also announced that a decision issued by the California Commission would be offered in evidence.

Southern Bell announced that there is a decided possibility that it may offer in evidence in this cause the separation procedures which underlay the 1956 contracts between Southern Bell and Peninsular Telephone Company (now General Telephone Company of Florida), as well as certain Bell System separation manuals.

With reference to all of the foregoing documents, it was agreed that the authenticity of said documents would not be questioned. However, each party reserved the right to object to the admissibility, on appropriate grounds, of any or all such documents.

The hearing examiner has recommended that the commission approve the foregoing agreements concerning the authentication and admissibility of the various documents discussed above.

IV. *Limitation of Number of Witnesses.*

No particular effort was made to specifically limit the number of witnesses, expert or otherwise, to be called by each party. However, each party did announce that it will probably call six witnesses.

The hearing examiner has recommended that no limitation be placed on the number of witnesses to be called by either party.

## V. *Time and Place for a Hearing on the Merits.*

It was agreed that there should be at least four hearings, perhaps five, and possibly six. At the first hearing, under the agreement, General will put in its direct testimony. At that hearing there will be no cross-examination although questions for clarification will be permitted. At the second hearing General's witnesses will be subject to cross-examination. At the third hearing Southern Bell will offer its direct testimony and there will be no cross-examination at that time although questions for clarification will be permitted. At the fourth hearing Southern Bell's witnesses will be subject to cross-examination. If there should be a fifth hearing, it would be for General's rebuttal and a sixth hearing would permit sur-rebuttal by Southern Bell.

It was agreed that the first hearing will be in Tampa, commencing at 9 A. M., September 1, 1960. The second hearing will be in Tampa, the third hearing and the fourth will be in Jacksonville. It was tentatively agreed that the second hearing will be September 20, 1960, however, there has already developed since the conference a conflict from the commission's standpoint which eliminates September 20 as a possible date for the second hearing. It was agreed that the dates for the second and subsequent hearings shall be fixed by the commission at some convenient future time after consulting the parties concerning available dates.

The hearing examiner has recommended that the first hearing be held in Tampa, commencing at 9 A. M., September 1, 1960, and that the dates for subsequent hearings be fixed by the commission as soon as conveniently possible keeping in mind the commitments of the parties and the commission. It was agreed that the third hearing at which Southern Bell will put in its direct testimony will be held on November 1, 1960 in Jacksonville. However, that date must be considered as tentative pending the fixing of a firm date for the second hearing. And so, the examiner further *recommended* that the second hearing be held sufficiently early to permit the third hearing to be held on November 1, as planned, if possible.

## VI. *Consideration of other matters.*

Southern Bell announced at the conference that it intended filing with the commission a motion going to the measurement of the exchange mileage loop. If the motion should be granted, the resulting study would require from eight to ten weeks. Technically, the motion should not be made prior to the presentation of General's direct testimony since it is predicated on the absence of proof going to that point in General's case. However, in the in-

terest of saving time, Southern Bell agreed to submit its proposed motion in writing, together with supporting memorandum, on or before August 1, 1960. General agreed to file its written reply on or before August 15, 1960. It was further agreed that there will be no oral argument on said motion and reply unless requested by the commission. These pleadings have been filed as agreed but will be disposed of by a separate order.

Southern Bell suggested one further matter for consideration. To the date of the conference, according to Southern Bell, General has withheld payment of approximately $700,000 because of this controversy. Southern Bell suggested that if General would pay the money over to Southern Bell, then Southern Bell would post a bond under which it would be obligated to make a retroactive settlement and pay interest thereon when the controversy is ultimately settled. Thereupon the parties agreed that the settlement will be retroactive to October 21, 1959, the date of the termination of the prior agreement. General announced that no bond was required and that it would immediately transmit appropriate payment to Southern Bell based on the terms of the former traffic agreement. The parties agreed that interest on the amount withheld will be computed on the amount finally determined to be due General, if any such determination is made, back to the date of the contract cancellation, to-wit: October 20, 1959. The difference between the two items will be determined and that difference will be limited to the company to which it is due.

The proposed remittance to Southern Bell will be without interest at this time, but interest will be computed on that amount at 6% for the time withheld to be offset by interest on the amount finally determined to be due. It is our understanding that General has already made the proposed remittance to Southern Bell.

It was finally agreed that the examiner's report and recommendations would be served on the parties by August 1, 1960 and that exceptions thereto by either party would be filed on or before August 15, 1960.

The examiner's report and recommendations were submitted to the commission and served on the parties on August 1, 1960. No exceptions thereto have been filed by either party.

The commission has carefully considered the examiner's report and recommendations, together with the record of the pre-hearing conference thus reported, and the commission being fully advised in the premises hereby finds that said examiner's report and recommendations, and the parties' agreements as set out therein, should be approved.

It is therefore ordered that the pre-hearing conference report and recommendations of the hearing examiner, as discussed herein, is approved, and that future proceedings in this cause of action shall be governed by the examiner's recommendations, aforesaid, and the agreements contained in said report, unless modified at some subsequent hearing by the commission to prevent manifest injustice.

*Order, September 1, 1960:* This cause came on this day to be considered by the full commission on the defendant's motion for a mileage study for the purpose of determining the mileage of complainant's exchange circuit plant used in handling toll calls and exchange calls, and the commission being fully advised in the premises finds —

(1)   That the parties are in disagreement concerning the correct ratio of exchange to toll mileage per call on exchange circuit plant.

(2)   That the ratio of exchange to toll mileage per call on General Telephone Company's exchange circuit plant appears to be an important element in this proceeding.

(3)   That the mileage study proposed by Southern Bell appears, at this stage of these proceedings, to be a reasonable method of determining as accurately as possible the correct ratio of exchange to toll mileage per call on General's exchange circuit plant.

(4)   That the proposed mileage study can be conducted in a manner which will not disturb nor interfere with the telephone service furnished by General.

(5)   That complainant should be given an opportunity to develop facts concerning what appears to be an important phase of this proceeding, which facts Southern Bell contends are inconsistent with certain assumptions upon which it claims General relies and requests the commission to accept.

(6)   That the proposed mileage study should be made by General and Southern Bell or, in the alternative, General should make its facilities and records available to Southern Bell for the purpose of making such a study. In either event, the commission's staff should be permitted to participate in or observe said study to such extent as the staff may find it conveniently practicable.

(7)   That the mileage study should comprehend a separation of the outside plant between underground plant and aerial plant.

(8) That the commission should reserve ruling upon the admissibility in evidence of said study, and the results obtained therefrom, should the same be offered in evidence at some hearing in this proceeding.

It is therefore ordered that defendant's motion for a mileage study is granted, in strict conformity with and subject to the specific findings set forth in this order.